UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DIANNA WALKER, | No. CV 05-7242-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 11, 2005, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 30, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 12, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on April 14, 1950. [See Administrative Record ("AR") at 53.] She attended three years of college, and has past work experience as, among other things, an administrative assistant, electronics assembler, and parts lister. [AR at 66, 72.]

On February 6, 2003, plaintiff protectively filed her current application[1] for Disability Insurance Benefits, alleging that she has been unable to work since December 8, 2000, due to back pain, vision loss, seizures, depression, a wrist injury, diabetes, knee pain and asthma. [AR at 23, 53-55, 65.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on May 6, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 441-69.]

On July 26, 2004, the ALJ determined that plaintiff was not disabled. [AR at 22-28.] When the Appeals Council denied review on September 6, 2005 [AR at 5-8], the ALJ's decision became the final decision of the Commissioner.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] Plaintiff filed prior applications in 1995 and 2002. The ALJ did not reopen those applications. [AR at 22.]

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in

the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

The ALJ first found that plaintiff met the insured status requirements of the Act through September 30, 2003. [AR at 22.] Applying the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 23.] At steps two and three, the ALJ concluded that plaintiff has a severe impairment consisting of "a history of multiple right wrist surgeries and degenerative disc disease of the lumbar spine," but that the impairment does not meet or equal any impairment in the Listing. [AR at 23.] At steps four and five, the ALJ concluded that plaintiff is not able to perform her past relevant work, but has the residual functional capacity ("RFC")[2] to perform a "significant range" of light work.[3] He then found that a significant number of jobs exist in the national economy that plaintiff can perform. Accordingly, the ALJ found plaintiff not disabled at any time through September 30, 2003. [AR at 22-28.]

---

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ concluded that plaintiff is limited to "occasional stooping, crouching, kneeling, crawling and climbing activities as well as occasional use of the right upper extremity for handling and fingering activities." [AR at 27.]

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) properly assess plaintiff's severe impairments, particularly in his rejection of a treating physician's opinion; (2) properly evaluate plaintiff's mental impairment; and (3) properly evaluate plaintiff's credibility. For the reasons explained below, the Court agrees with plaintiff in part, and remands this matter for further proceedings.

## A.    THE EVIDENCE

As relevant to the issues raised in the Joint Stipulation, the evidence shows that Dr. Stewart W. Brown, who had performed surgeries on plaintiff's right wrist in 1996 and 1997, concluded in February, 2002, that she has "bilateral hand medical impairments." [AR at 318.] He goes on to describe, however, only right wrist pain, pain of the right elbow, and signs of ulnar nerve dysfunction on the right. He concludes that "[i]t is probable that the right hand will remain a light assistive to the left," and plaintiff would be limited to occasional light lifting, grasping, pulling, pushing and twisting of the right dominant hand. Id.

On March 29, 2002, Dr. John Sedgh conducted an internal medicine examination of plaintiff. He opined that plaintiff appeared to be a "suboptiomal historian." After conducting his examination, Dr. Sedgh concluded that despite plaintiff's complaints of asthma, her lung examination was normal; despite reports of hypertension, there was no evidence of end organ damage; plaintiff had decreased range of motion of the back and her straight leg raising test was negative sitting up; she had decreased range of motion of the right wrist. He concluded that plaintiff can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds, can stand and/or walk with normal breaks for six hours, and can sit with normal breaks for six hours in an eight hour work day. She has a problem with frequent manipulation on the right hand. [AR at 279-84.]

Dr. Ursula Taylor performed an internal medicine evaluation of plaintiff on April 9, 2003. She found plaintiff's reliability to be average. Following her examination of plaintiff, which included x-rays of the lumbar spine, she observed that plaintiff had deformity of the right wrist, but there

were no specific findings concerning the left wrist. Plaintiff had positive straight leg raises, but refused range of motion movements for her lumbar spine. She did not appear to need a cane for ambulation. X-rays showed some disc space narrowing, which may be due to disc disease. Dr. Taylor opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, as limited due to wrist pain and low back pain. There were no restrictions in walking, standing or sitting, and no assistive devices were needed. Dr. Taylor imposed hand use restrictions for the right hand, but no restrictions as to the left wrist. [AR at 369-74.]

Plaintiff was examined by Dr. Pedro Florescio on March 29, 2002, who conducted a complete psychiatric evaluation. Plaintiff was found to be a "good and reliable historian" who told Dr. Florescio that she "ha[s] no mental problem, none." [AR at 274.] She denied feeling depressed, denied having auditory or visual hallucinations, and denied having suicidal or homicidal ideation. Plaintiff indicated that she saw a psychiatrist 25 years ago. She reported that she can attend to personal hygiene without assistance, and can go places by herself. [AR at 276.] In conclusion, Dr. Florescio opined that plaintiff "does not have any symptoms of depression." She could focus her attention without any limitation, and could follow both simple and complex oral and written instructions without limitations. Her daily activities were not limited. From a psychiatric point of view, plaintiff's "prognosis was good." [AR at 277-78.]

Over one year later, on April 7, 2003, plaintiff was examined by Dr. Ernest Bagner, III, and was given another complete psychiatric evaluation. Dr. Bagner considered plaintiff to be "a reliable historian." Plaintiff again denied having any psychiatric problems, but reported difficulty with concentration and memory, as well as panic attacks and paranoia. [AR at 365.] She reported being able to dress and bathe herself, as well as shop and manage money. [AR at 366.] Dr. Bagner opined that the only limitations plaintiff would have involved mild to moderate limitations on maintaining concentration and attention. [AR at 368.]

On February 11, 2004, Dr. Marco Garcia completed a Medical Questionnaire in which he indicated he had treated plaintiff from March, 2002, to February, 2004, seeing plaintiff approximately every 2 to 3 three months. He diagnosed her with multiple fractures and surgeries of the wrist, and degenerative joint disease of the knees, elbows and lumbar spine that worsens

over time. He reported that plaintiff has to lie down 20 to 30 minutes during the day due to low back pain. He also reported that plaintiff suffers from depression. Dr. Garcia limited plaintiff to 15 minutes of sitting at one time for a total of two hours in an eight hour day, 15 minutes of standing at one time for a total of 30 minutes a day, 20 minutes of walking at a time with a total of 30 minutes a day, and no bending, stooping or fine manipulation. She could occasionally lift and carry up to 5 pounds, and can never bend, squat or climb. Dr. Garcia restricted all activities with plaintiff's hands and legs. He anticipated that plaintiff would miss three or more days of work each month due to her condition, and opined that she requires a cane for ambulation. [AR at 389-92.] In reaching his conclusions, Dr. Garcia referred to the following relevant clinical findings and test results: scars, tenderness and swelling of the arm and wrist, tenderness at the low back, x-rays, and MRI and EMG tests. [AR at 389.]

**B.    TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ erred in his consideration of a treating physician's opinion, that rendered by Dr. Marco Garcia on February 11, 2004. It is well established in this Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted by the opinion of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

With respect to Dr. Garcia, the Court finds that the ALJ's stated reasons for rejecting the opinion given by him on February 11, 2004, do not satisfy the governing standard. The only reasons supplied by the ALJ for rejecting the foregoing opinion were that Dr. Garcia "provided no objective support for the[] limitations" he imposed on plaintiff, and there were "no neurological deficits to support the back and wrist restrictions." [AR at 24.] These conclusory assertions by the ALJ constitute the same kind of non-specific boilerplate language rejected by the Ninth Circuit as insufficient in Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." (footnote omitted)).

In his rejection of the opinion at issue here, the ALJ failed to provide legally sufficient reasons and to explain how the "objective factors" he listed contradict Dr. Garcia's assessment. For example, while the ALJ indicates that there are no neurological deficits to support the wrist restrictions placed on plaintiff by Dr. Garcia, he also notes an electrodiagnostic study of plaintiff's wrist that showed some right sensory latency. The ALJ does not explain why this finding does not support the wrist restrictions, especially as the study was labeled by the reporting neurologist as "abnormal." [AR at 24-25, 422.][4] Neither does the ALJ comment on the fact that Dr. Garcia treated plaintiff over a period of time at a county facility whose records include x-rays of plaintiff's knees and elbows from January, 2003, which revealed mild degenerative changes in those joints. [AR at 418.] The ALJ notes this report [AR at 24], but fails to give reasons why these findings also do not support Dr. Garcia's limitations. In short, the ALJ did no more than offer his own conclusions; he did not explain why those conclusions were correct to the exclusion of those of Dr. Garcia. Embrey, 849 F.2d at 421-22. Neither does the ALJ account for the subjective assessment of Dr.

---

[4] The ALJ's comments that plaintiff's sensory latency is consistent with previous carpal tunnel syndrome, and may not represent any new pathology [AR at 25], do not shed any light on why the ALJ believes the study does not support Dr. Garcia's limitations.

Garcia. "The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations. Accordingly, the ultimate conclusions of these physicians must be given substantial weight." Embrey, 849 F.2d at 422. This is especially true where Dr. Garcia in his evaluation indicated that he relied in part on observations of tenderness and swelling in plaintiff's arm and wrist. In sum, the grounds cited by the ALJ in dismissing Dr. Garcia's opinion were too broad and conclusory to withstand remand. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record, was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); Embrey, 849 F.2d at 421-22 (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion). Remand on this issue is warranted.

However, plaintiff's claim that the ALJ improperly rejected her mental impairment is not persuasive. While there are intermittent mentions in the record of plaintiff having a "very hostile angry affect" in March, 2002 [AR at 417], anxiety in February, 2003 [AR at 406], depression in mid- to late-2003 [AR at 395, 396, 398, 399], and that plaintiff apparently was prescribed medication in this regard which helped the condition [AR at 399], there is no evidence that she received psychological or psychiatric counseling or other treatment for her alleged condition. More importantly, during the psychiatric consultative examinations performed on plaintiff by Dr. Florescio and Dr. Bagner, she specifically and emphatically denied any current mental impairment during the same time frame as these notations in the record. Indeed, these examining physicians found no disabling mental impairment following their examinations of plaintiff. Substantial evidence thus supports the ALJ not finding a severe mental impairment.

**C.    PLAINTIFF'S CREDIBILITY**

In denying benefits, and finding that plaintiff can perform a significant range of light work, the ALJ concluded that plaintiff's testimony concerning the severity of her impairments and the limitations they impose was "not totally credible." [AR at 27.] Plaintiff argues that the ALJ

9

improperly rejected her subjective symptom testimony without providing adequate reasons for doing so. Plaintiff's claim is without merit.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Based on these standards, the ALJ's conclusion that plaintiff "complains of many problems that have no medical basis" is a clear and convincing reason to reject her credibility. Despite her complaints about problems with her left wrist, no evidence in the record supports that claim. Even Dr. Brown, who stated that plaintiff had bilateral hand impairments, described limitations only as to her right hand. Next, while plaintiff complained in March, 2003, and again at the hearing in May, 2004, of experiencing seizures for two years, 2-4 times a month [AR at 362-64, 448], she was not receiving medications for this condition [AR at 362], and no medical confirmation exists

for this allegation.[5]  Finally, plaintiff's statements to certain physicians that she is depressed, which contradict her assertions to the consulting physicians that she has no psychological issues, are a valid reason to reject her credibility.[6]  Remand on this ground is not warranted.[7]

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to determine if specific and legitimate reasons exist to disregard the disability opinions of Dr. Garcia. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

---

[5]  Plaintiff in her Seizure Questionnaire indicated she sees a Dr. Sayed "frequently" for her health problems, but that there is "not enough time to cover everything" [AR at 363], perhaps attempting to account for the absence of records or physicians' notes concerning her seizures. The Court is skeptical that a consciousness-losing, incapacitating event such as that described in plaintiff's Seizure Questionnaire would not be related to a physician, even if time constraints existed.

[6]  Plaintiff testified that her depression "came back" about 1½-2 years prior to the May 6, 2004, hearing [AR at 453], i.e., within the time frame when she denied any psychiatric problems to Dr. Bagner. [AR at 365.]

[7]  The Court finds that some of the reasons given by the ALJ to reject plaintiff's credibility were not clear and convincing.  For example, even though Dr. Sedgh described plaintiff as "a suboptiomal historian," Dr. Bagner and Dr. Florescio described her as a "reliable historian" and a "good and reliable historian."  The ALJ does not explain why Dr. Sedgh was in a better position to make this determination, or why he chose this opinion over the others.  Next, the ALJ points to nothing to contradict plaintiff's claim that her typing speed has decreased over the past two years, or that such a decrease is inconsistent with the evidence.  Finally, and contrary to the ALJ's implication that plaintiff changed her story concerning her daily activities, a close examination of the record shows that plaintiff told Dr. Florescio in March, 2002, that she could attend to her personal hygiene, go places by herself, does not pay bills because she is poor (i.e., not because of an inability to do so), and watches television.  She gave Dr. Bagner essentially the same information (dresses and bathes herself, goes places alone, manages money, likes to watch television). She did not change her story as to her daily activities in these two reports. Nevertheless, other reasons given by the ALJ are sufficient to reject plaintiff's credibility.

11

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 13, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE